UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

111 DEBT ACQUISITION LLC,

      Plaintiff,                                  Case No. 2:08-cv-768
                                                    JUDGE GREGORY L. FROST
     v.                                             Magistrate Judge Norah McCann King

SIX VENTURES LTD., et al.,

      Defendants.

**OPINION AND ORDER**

This matter is before the Court for consideration of Plaintiff's Motion for Temporary Restraining Order and for Preliminary Injunction ("Plaintiff's Motion for Preliminary Injunctive Relief") (Doc. # 6) and Plaintiff's Motion for Expedited Discovery (Doc. # 5). For the reasons that follow, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff's Motion for Preliminary Injunctive Relief and **DENIES** Plaintiff's Motion for Expedited Discovery.

**I. Background**

The following facts briefly summarize the evidence submitted to the Court. Any findings of fact and conclusions of law made herein in connection with the request for injunctive relief are not binding at a trial on the merits. *See United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) (citing *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981)).

On November 22, 2006 CFA Capital Partners LLC ("CFA") loaned Defendant Six Ventures Ltd. $ 20,900,000.00 in connection with Defendants' refinancing of six apartment complexes, 766 units, located in Columbus, Gahanna, and Reynoldsburg, Ohio (the "Property"). Defendants and CFA executed a Loan and Security Agreement, Promissory Note, and Deposit

Account Control Agreement in connection with that transaction ("loan agreements").  Also in connection with that transaction, CFA assigned its rights under the agreements with Defendants to Plaintiff.

Since the inception of the loan, Defendants utilized an operating account at Fifth Third Bank in which they would deposit the rents from the Property and from which they would pay all expenses related to the Property, including the payment on the loan for the Property.  This course of conduct was not in compliance with Section 3.1 of the Loan and Security Agreement.  Section 3.1 dictates that Defendant would make use of a clearing account for depositing all rents collected from the Property and that the monies would be "swept" into an operating account on a daily basis.  The operating account would be used disburse payments for expenses related to the Property.  Plaintiff, however, did not protest Defendants course of conduct and the parties apparently performed satisfactorily their respective contractual duties until approximately June 2008.

The payment on the loan for the Property was due to be paid on the first of each month.  Defendants, however, were usually late making that payment and Plaintiff had never protested this conduct.  Within the last two months, June and July 2008, Defendants were more tardy than usual and, indeed, have failed completely to make the August 2008 payment.

Plaintiff grew concerned that it would not be paid for the loan on the Property because of Defendants' payment conduct.  Plaintiff's president and vice president visited the apartment complexes and both indicated that the visits only added to their concern about Defendants'

financial situation.[1] Also, Mr. Rhodehamel, on behalf of Defendants, allegedly indicated to Plaintiff that he may declare bankruptcy. Adding to Plaintiff's concerns was the information from Fifth Third Bank that, on August 6, 2008, it brought suit against Mr. Rhodehamel for default on a revolving note in the amount of $ 650,000.00 in a transaction that is not related to this action.

On August 8, 2008 Plaintiff notified Defendants that they were in default on the loan agreements and demanded payment of the $ 21,900,000.00 loan plus interest, late fees, and tax and insurance shortfalls. Defendants did not respond to this notice.

Plaintiff brought this breach of contract action and its motion for injunctive relief on August 11, 2008. On that same day, the Court held an in-person conference pursuant to Local Rule 65.1. S.D. Ohio Civ. R. 65.1. The following day, August 12, 2008, the Court held a preliminary injunction hearing. Based upon the briefing, conference, and the preliminary injunction hearing, Plaintiff requests the following preliminary injunctive relief:

    1. The rents from the Property to be deposited into a transparent operating account.

    2. The outgoing payments related to the Property to be paid in accordance with Section 3.11 of the Loan and Security Agreement.

    3. That either Plaintiff or the bank (which holds the operating account) be put in

---

[1] At this point, Plaintiff contends that it appropriately instituted what the Loan and Security Agreement refers to as a "cash management period." Defendants argue that Plaintiff failed to appropriately institute this period. The Court finds that it is not necessary to consider the cash management period issue in order to address Plaintiff's request for a preliminary injunction. Thus, this issue shall be left for a trial on the merits.

controlof making the outgoing payments from the operating account.[2]

Also on August 11, 2008, Plaintiff filed Plaintiff's Motion for Expedited Discovery.

## II. Analysis

### A. Plaintiff's Motion for Expedited Discovery

Initially, the Court notes that its subject matter jurisdiction and venue are disputed by Defendants.  Specifically, although there are a number of contractual agreements between the parties to this action, the Loan and Security Agreement, which appears to be the only document that Defendants have breached, includes a choice of law provision that requires disputes to be brought in New York, New York.  However, "[i]t is clearly established that district courts have jurisdiction to determine their own jurisdiction." *Continental Cablevision of Michigan, Inc. v. Edward Rose Realty, Inc.*, 840 F.2d 16, No. 87-2001, 1988 U.S. App. LEXIS 1981, *14 n.7 (6th Cir. February 17, 1988) (unpublished opinion) (citing *United States v. United Mine Workers of America*, 330 U.S. 258, 291 (1947); *Fireman's Fund Ins. Co. v. Ry. Express Agency*, 253 F.2d 780, 784 (6th Cir. 1958)).  And, in any event, the maintenance of the *status quo* is sustainable, at least until a district court makes the necessary determination concerning its own jurisdiction. *Id.* ("courts have the authority to issue preliminary injunctions and other orders in order to maintain the *status quo* while they are inquiring into whether they have jurisdiction," citing *United Mine*

---

[2]The Court notes that Plaintiff has filed a supplement to its request for injunctive relief indicating that Defendants owe more on taxes and water bills on the Property than had previously been known.  The Court does not find that this information changes its conclusions already made in this order.  However, the Court finds it surprising that in its supplement Plaintiff refers to its request for a cash management period.  At the preliminary injunction hearing Plaintiff clearly withdrew its request that this Court recognize it effectively noticed Defendants of a contractual  cash management period, as that phrase is defined in the Loan and Security Agreement.  Indeed, in this Opinion and Order the Court has specifically left that issue for trial.

*Workers*, 330 U.S. at 290, *Roth v. Bank of the Commonwealth*, 583 F.2d 527 (6th Cir. 1978), and *Am. Fed. of Musicians v. Stein*, 213 F.2d 679 (6th Cir. 1954)). The Court is not inclined to allow expedited discovery while jurisdiction and venue are at issue.

Accordingly, the Court **DENIES** Plaintiff's Motion for Expedited Discovery (Doc. # 5) and refers this matter to the Magistrate Judge to schedule the preliminary pretrial conference so that, *inter alia*, deadlines for jurisdictional/venue motions can be set. *See* Fed. R. Civ. P. 26(f).

**B. Plaintiff's Motion for Preliminary Injunctive Relief**

Fed. R. Civ. P. 65 permits a party to a suit to seek injunctive relief if he believes he will suffer irreparable harm or injury. The decision whether or not to issue a preliminary injunction falls within sound discretion of the district court. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). The trial court, however, should grant this extraordinary remedy only after it has carefully considered the following four factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir.2000) (citing *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*), quoting *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir. 1995)). These four considerations are not required elements of a conjunctive test but are rather factors to be balanced. *Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001) (no single factor is determinative.); *Monongahela Power Co. v. Schriber*, 322 F. Supp.2d 902, 918 (S.D. Ohio 2004).

"The purpose of a preliminary injunction is always to prevent irreparable injury so as to

5

preserve the court's ability to render a meaningful decision on the merits." *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (citing *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978)).  This "traditional preliminary injunctive standard -- the balancing of equities -- applies to motions for mandatory preliminary injunctive relief as well as motions for prohibitory preliminary injunctive relief."  *Id.*

  **1.  Does Plaintiff have a strong likelihood of success on the merits?**

  The Court finds that this factor weighs in favor of Plaintiff.  To prevail on a breach of contract claim, a plaintiff must establish (1) the existence of a contract, (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff.  *Thomas v. Publishers Clearing House, Inc.*, No. 00-3948, 2002 U.S. App. LEXIS 2069, at *5 (6th Cir. Feb. 5, 2002) (citing *Doner v. Snapp*, 649 N.E.2d 42, 44 (Ohio Ct. App. 1994)).

  First, neither Plaintiff nor Defendants dispute the validity of the loan agreements.  Defendants, however, do dispute whether Plaintiff is the actual party in interest to the loan agreements.  Defendants argue that Plaintiff has failed to establish that it is the real party in interest because it has not produced any document showing such a relationship.  This argument is not well taken.

  Plaintiff has submitted a sworn averment from John F. Driscoll, the vice president of Plaintiff 111Debt Acquisition LLC, indicating that Plaintiff is indeed the real party in interest in this action.  This Court may rely upon this sworn statement.  *See* Moore's Federal Practice § 65.23[2]  ("the weight given to affidavits is within the district court's discretion" when considering preliminary injunction request).  Further, at the preliminary injunction hearing,

counsel for Plaintiff, John F. Marsh, unequivocally stated that the documents to support its position that it is the party in interest will be forthcoming.  The Court finds that Mr. Marsh's statement and Mr. Driscoll's averment are currently sufficient to establish that Plaintiff is the proper party to bring this action.  Therefore, Plaintiff can establish that there is a valid contract between Plaintiff and Defendants.

Second, it is not disputed that Plaintiff performed its contractual obligations, making it clear that the second element of the breach of contract claim is met.

Third, Plaintiff alleges that Defendants breached the Loan and Security Agreement because Defendants did not remit their loan payment that was due on August 1, 2008.  Indeed, at the hearing on Plaintiff's motion, Mr. Rhodehamel admitted that he has not made the August payment.  Thus, currently it is not disputed that Defendants are in breach of the Loan and Security Agreement, which is sufficient to establish the third element of a breach of contract claim.

Finally, Plaintiff has demonstrated that Defendants' breach of the Loan and Security Agreement has visited a current loss to Plaintiff of over one hundred thousand dollars, *i.e.*, the amount of the overdue loan payment, satisfying the fourth element of a breach of contract claim.

In their defense, Defendants contend that they have not been given their contractual time to cure their breach.  Although Defendants are correct, the nature of the emergency relief Plaintiff requests overcomes this contractual remedy.  However, the Court is not deaf to Defendants complaint and, as is reflective in the injunctive relief it has fashioned in this action, Defendants are given the opportunity to come into compliance with their contractual obligations to Plaintiff with certain precautions in place.  Indeed, Mr. Rhodehamel indicated at the

preliminary injunction hearing that he will be able to pay the amount currently in default if he is not forced into a position where that loan payment must be prioritized to the top of his payment list–a position this Court has not forced.

Accordingly, the Court concludes that Plaintiff has shown a strong likelihood of success on its breach of contract claim.

### 2. Will Plaintiff suffer irreparable injury if injunctive relief is denied?

The Court finds that this factor does not weigh in Plaintiff's favor. Plaintiff correctly argues that in *Interactive Teleservices Corp. v. Concentra Solutions*, No. C2-04-961, slip op., (S.D. Ohio Nov. 10, 2004) a judge in this district held that the potential insolvency of a defendant qualifies as irreparable injury. Plaintiff concludes that, like the plaintiff in *Interactive Teleservices*, it too will suffer irreparable injury based upon Defendants' potential insolvency. This Court, however, disagrees.

While *Interactive Teleservices* is similar to this action, there are important differences between the two cases that prevent it from supporting Plaintiff's conclusion. First, at the preliminary injunction hearing in *Interactive Teleservices* the defendant admitted that it possessed over one million dollars in debts that it was unable to pay. At the hearing in the instant action, Mr. Rhodehamel, on Defendants' behalf, stated that Defendants' debts would be paid.

Further, the *Interactive Teleservices* court stated: "Plaintiff has produced evidence showing that Defendant is likely to hide, secrete, or dissipate assets prior to judgment" and that "Defendant has made numerous bank transfers and the explanations that it has provided for such transactions do not convince this Court that Defendant has not already been hiding or secreting

assets or likely to continue to hide or secrete assets." *Id.* at 23. Here, although Plaintiff did have a legitimate concern when the Fifth Third Bank operating account was not being used, Mr. Rhodehamel gave a believable explanation at the preliminary injunction hearing, *i.e.*, Defendants opened another operating account at National City Bank because of a hold that was placed on the Fifth Third Bank operating account. Thus, there is no evidence to indicate that Defendants are likely to hide, secrete, or dissipate assets nor does this Court doubt Mr. Rhodehamel's explanation of Defendants' use of the National City Bank operating account.

Finally, another significant difference between *Interactive Teleservices* and the instant action is that the *Interactive Teleservices* plaintiff would likely have been forced into bankruptcy if the defendant failed to pay its debt. *See also Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 924 (6th Cir. 1978) ("We believe the record in this case supports the decision of the district court to grant a preliminary injunction. . . . The plaintiff introduced proof of such severe financial hardship that, upon finding the requisite likelihood of success, the court could reasonably concluded that delay in granting interlocutory relief would render a later judgment on the merits meaningless. Under [plaintiff's] proof he would have been completely 'wiped out' long before a final decision could be expected."). In the case *sub judice*, there is no threat that Plaintiff may go bankrupt or lose any portion of its business if Defendants do not remedy their default.

Consequently, this case is more in line with those cases that hold that "irreparable injury is an injury for which the court could not compensate the movant should the movant prevail in the final decree." Moore's Federal Practice § 65.22[1][b]. In other words, "lost income or economic loss that is calculable and compensable by monetary damages ordinarily will not be considered irreparable injury." *Id.* (citing cases from five of our sister circuits). *See also*

*Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) ("A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages.").

The Court notes here that granting the preliminary injunction in its entirety, so that Plaintiff is given the ability to control the outgoing payments made from the operating account, could cause Defendants much harm. As Mr. Rhodehamel, on behalf of Defendants, explained at the preliminary injunction hearing, Defendants are required to make decisions on the order of debt payments based largely upon when the Property's tenants pay their rent. In this challenging economic environment, that means that many payments are made late. Mr. Rhodehamel convinced this Court–at least temporarily–that with some latitude on the order of payment of debts he will be able to become current on the debts related to the Property.

Accordingly, Plaintiff has failed to show that it will suffer irreparable injury without the relief its requests.

### 3. Will issuance of an injunction cause substantial harm to others?

This factor weighs in favor of Plaintiff in that the Court concludes that no third party will be substantially harmed if the injunction in part issues. *See Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (finding no "harm to third parties"). That is, the preliminary injunction will not permit Plaintiff to be in control of the operating account. Mr. Rhodehamel will be allowed to pay the expenses pursuant to Section 3.11 priority but will also be given the ability to alter this order if, for example, the water to the apartment units will be shut off if it is not paid first. Obviously, many third parties could be potentially affected if the preliminary relief were not tailored in this way.

**4.  Will the public interest be served upon issuance of injunctive relief?**

This factor weighs neither in favor of Plaintiff nor in favor of Defendants.  Of course, the public interest is served when valid contracts are enforced.  *See D.J. Miller & Assoc., Inc. v. Ohio Dept. of Admin. Serv.*, 115 F. Supp.2d 872, 884 (S.D. Ohio 2000) ("valid contracts are the lynchpin of all commercial activity in society").  Yet, in this situation, the public interest would be served as well if Defendants are able to continue in business, which business provides fairly low cost apartments to economically disadvantaged individuals.  Certainly, there is no guarantee that these homes would stay available if Defendants' businesses fail.

### III.  Conclusion

Based on the foregoing, the Court **DENIES** Plaintiff's Motion for Expedited Discovery (Doc. # 5) and **GRANTS IN PART and DENIES IN PART** Plaintiff's Motion for Preliminary Injunctive Relief (Doc. # 6).  Specifically, the Court **ORDERS**:

> 1.  Defendants to continue to use the operating account Mr. Rhodehamel has recently opened at National City Bank.  As was done in the past with the operating account at Fifth Third Bank, Defendants are to deposit all rents from the Property into that account.
>
> 2.  Mr. Rhodehamel shall immediately provide the information to Plaintiff that will make the National City Bank operating account activity available for Plaintiff to observe without any hindrance.
>
> 3.  Mr. Rhodehamel shall pay the operating expenses for the Property out of the National City Bank operating account in accordance with Section 3.11 of the Loan and Security Agreement.
>
> 4.  Mr. Rhodehamel shall provide to Plaintiff on a weekly basis a record of activity in the National City Bank operating account, specifically accounting for the incoming rents and of the outgoing expenses.
>
> 5.  The payment order set forth in Section 3.11 may be altered upon agreement between Plaintiff and Mr. Rhodehamel.
>
> 6.  If there is a dispute about the order of payment of debts, the parties may request a

telephone conference with this Court.

7. This preliminary injunction shall stay in effect until a trial on the merits is held.

8. No bond shall be required.

**IT IS SO ORDERED.**

>**/s/ Gregory L. Frost**
>**GREGORY L. FROST**
>**UNITED STATES DISTRICT JUDGE**