# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

111 DEBT ACQUISITION LLC,

     Plaintiff,

     v.                      **Case No. C2-08-768**

                              **JUDGE GREGORY L. FROST**

SIX VENTURES, LTD., ET AL.       **Magistrate Judge Norah McCann King**

     Defendants.

## OPINION AND ORDER

This matter comes on for consideration of 111 Debt Acquisition LLC's ("Plaintiff's") Motion for Partial Summary Judgment (Doc. # 32), Memorandum Contra of Defendants Steven M. Kahn and William C. McMenamy Jr. to Plaintiff's Motion for Partial Summary Judgment (Doc. # 61), and Plaintiff's Reply in Support of its Motion (Doc. # 71). For the reasons that follow, the Court **GRANTS** Plaintiff's motion.

## I. Background

On November 22, 2006 CFA Capital Partners LLC ("CFA") loaned Defendant Six Ventures Ltd. ("Six Ventures") $ 20,900,000.00 in connection with Six Ventures' refinancing of six apartment complexes. The complexes consist of 766 units and are located in Columbus, Gahanna, and Reynoldsburg, Ohio (the "Property"). Six Ventures and CFA executed a Loan and Security Agreement, Promissory Note, and Deposit Account Control Agreement in connection with that transaction ("Loan Agreements"). As part of the loan transaction between CFA and Six Ventures, Defendants David R. Rhodehamel, Steven M. Kahn, and William C. McMenamy,

Jr., (together "Guarantors")[1], signed the Guaranty of Recourse Obligations ("Guaranty").  Also as part of the loan transaction, CFA executed and delivered to Plaintiff the assignment of its rights in the loan made to Six Ventures.

On August 8, 2008 Plaintiff notified Six Ventures that it was in default on the Loan Agreements and demanded payment of the $ 20,900,000.00 loan plus interest, late fees, and tax and insurance shortfalls.  Six Ventures did not respond to this notice.

Plaintiff brought this breach of contract action and its motion for immediate injunctive relief on August 11, 2008.  (Docs. # 2, 6.)  On that same day, the Court held an in-person conference pursuant to Local Rule 65.1.  S.D. Ohio Civ. R. 65.1.  The following day, August 12, 2008, the Court held a preliminary injunction hearing.  (Doc. # 8.)  On August 15, 2008 this Court granted in part and denied in part Plaintiff's request for injunctive relief.  (Doc. # 10.)

On August 25, 2008 Plaintiff filed its Amended Complaint (Doc. # 14), a supplemental memorandum supporting that complaint (Doc. # 15), and an affidavit supporting that complaint (Doc. # 17).  On that same day, Plaintiff filed an emergency motion to appoint a receiver.  (Doc. # 16.)  This Court scheduled a hearing for September 3, 2008 on the emergency motion.

On September 3, 2008, before the scheduled hearing on the appointment of a receiver, Six Ventures filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Ohio.  Consequently, this Court issued an order staying these proceedings under 11 U.S.C. § 362(a) pending resolution of the bankruptcy proceedings with the exception of the

---

[1]Guarantor Rhodehamel did not join the motion of Kahn and McMenamy.  However, Plaintiff's claim against Rhodehamel rises or falls with its claim against the other two guarantors.  Accordingly, the Court will address all three of the guarantors together for the purposes of this Opinion and Order.

claims for relief against Guarantors who had not joined in the bankruptcy filing. (Doc. # 30.)

On October 6, 2008 Plaintiff filed a notice of the entry of an order issued by the bankruptcy court, which granted Plaintiff relief from the automatic stay imposed by 11 U.S.C. § 362(a) and allowed Plaintiff, among other things, to proceed with the instant foreclosure proceeding. (Doc. # 36.)

On October 14, 2008 Plaintiff filed a motion for an order to show cause why Defendants should not be held in contempt. (Doc. # 39.) This Court lifted the stay in this action and scheduled a hearing on the contempt motion and on the appointment of a receiver. (Docs. # 38, 40.) Before that hearing occurred the parties, with the undersigned's approval, entered into an agreed order appointing a receiver. (Doc. # 42.) Plaintiff voluntarily withdrew its contempt motion. (Doc. # 43.)

Currently at issue is Plaintiff's Motion for Partial Summary Judgment, wherein Plaintiff seeks to hold Guarantors liable for the debt of Six Ventures pursuant to the terms of the Guaranty. (Doc. # 32.) Specifically, Plaintiff contends that Guarantors are personally liable for the $ 20,900,000.00 loan made to Six Ventures by Plaintiff because Six Ventures recent filing for bankruptcy qualifies as a "Springing Recourse Event" under the Guaranty, which triggers Guarantors' obligation for immediate payment of the full debt.

## II.  Standard

Fed. R. Civ. P. 56 provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).  In determining whether there is a genuine issue as to any material fact, the

evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252. The Court, however, may not make credibility determinations or weigh the evidence. *Anderson*, 477 U.S. at 255.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

### III. Analysis

Plaintiff requests summary judgment on its claim that it is entitled to hold Guarantors personally liable for the loan Plaintiff made to Six Ventures. Plaintiff argues that the bankruptcy petition filed by Six Ventures on September 3, 2008 was an event which triggered personal liability upon Guarantors under the terms of the Guaranty.

In response, Guarantors argue that Plaintiff is not entitled to summary judgment on the issue of their personal liability under the Guaranty because (A) the contract is ambiguous and is therefore not suited to interpretation as a matter of law, (B) the motion is procedurally defective, and (C) the contract is void as against public policy.

## A. The Loan Agreements and the Guaranty

As jurisdiction is based on diversity and the parties have agreed that Ohio law governs, this Court will apply the substantive law of Ohio. Generally, the interpretation of a written agreement is a matter of law for the court. *See Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995). Only if the Court determines that a contract term is ambiguous does a question of fact arise for the jury. *See Gencorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 818 (6th Cir. 1999) (interpreting Ohio law). Additionally, it is well settled that the interpretation of a guaranty is identical to the principles of regular contract interpretation. *See Stone v. Nat'l City Bank*, 106 Ohio App.3d 212, 217 (Ohio Ct. App. 1995); *see also G.F. Bus. Equip., Inc. v. Liston*, 7 Ohio App.3d 223, 224 (Ohio Ct. App. 1982) (stating that Ohio courts should construe guaranty agreements in the same manner as other contracts). Finally, writings that are a part of the same transaction shall be read as a whole, and the intent of each section shall be ascertained from a consideration of the whole. *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Auth.*, 78 Ohio St. 3d 353, 361 (1997).

"Under Ohio law, if the language of a contract is clear and unambiguous, a court may not resort to construction of that language." *Medical Billing, Inc. v. Medical Mgmt. Sciences, Inc.*, 212 F.3d 332, 336 (6th Cir. 2000) (citing *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 64 Ohio

St.3d 657, 665 (1992)).  Ambiguity exists only where a term cannot be ascertained from the four corners of the contract, or where the contract language is susceptible to two or more reasonable interpretations.  *See Gencorp, Inc.*, 178 F.3d at 818.  The principal purpose for judicial examination of a clear and unambiguous contract is to ascertain and effectuate the intent of the parties.  *See Aultman Hosp. Ass'n v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53 (1989).  Thus, if the terms of the contract are clear and unambiguous, the court shall presume that the parties' intent resides in the language of the agreement, and the court shall apply the terms, not interpret them.  *See Foster Wheeler Enviresponse, Inc.*, 78 Ohio St.3d at 361; *Kelly v. Medical Life Ins. Co.*, 31 Ohio St.3d 130, 13 (1987); *Gencorp, Inc.*, 178 F.3d at 817-18 (citing *Timber Ridge Inv., Ltd. v. Marcus*, 107 Ohio App.3d 174, 175 (Ohio Ct. App. 1995)).

In the instant action, the Court concludes that the language contained in both the Guaranty and the Loan Agreements is clear and unambiguous.  As such, there is no question of fact for the jury; the Court shall apply the terms of the contracts as a matter of law.  The express terms of the Guaranty clearly indicate that Guarantors agreed to be personally liable for all damages that arose from Six Ventures' breach of the Loan Agreements by its filing bankruptcy.

Guarantors' arguments against summary judgment focus on two contractual phrases: a "Springing Recourse Event" and "Guaranteed Obligations."

### 1.  Springing Recourse Event

Guarantors contend that Plaintiff is not entitled to summary judgment because the phrase "Springing Recourse Event" is either ambiguous or in direct conflict with another section of the Guaranty and that even if this were not the case, no Springing Recourse Event occurred.  This Court disagrees.

**a. There is no ambiguity in the phrase "Springing Recourse Event" nor is that phrase in direct conflict with other contract provisions at issue here.**

Section 1 of the Guaranty, titled "Definitions," presents at subsection (b):

> The term Guaranteed Obligations means (i) Borrower's Recourse Liabilities, (ii) from and after the date any Springing Recourse Event occurs, payment of all the Debt as and when the same is due in accordance with the Loan Documents (and whether accrued prior to, on or after such date).

(Doc. # 15, Tab 48, §1(b).)

Guarantors argue that this Section is either ambiguous or in direct conflict with Section 5(b)(i) of the Guaranty, stating:

> Specifically, under the Guaranty at issue, the "obligations of Guarantors … ***shall not*** be in any way affected by any of the following:"
>
> > (i) any insolvency, bankruptcy, liquidation, reorganization, readjustment, composition, dissolution, receivership, conservatorship, winding up or other similar proceeding involving or affecting Borrower, the Property or any part thereof, or a Guarantor.
>
> Yet, Plaintiff explicitly bases its "Springing Recourse Event" upon the bankruptcy filing of Six Ventures Ltd (the Borrower).  To do so violates the plain language of the Guaranty that "bankruptcy… involving the Borrower" shall not affect the obligations of the Guarantors.  *Id.*  It also violates the understanding of the parties as it pertains to the Guaranty.  *See* Kahn Affidavit ¶6 (stating that "I never intended, nor was it my understanding, for myself to be obligated for the full amount of the Debt based upon the filing of a bankruptcy petition by Six Ventures.")  This attempt to premise additional liability upon an event that the Guaranty has explicitly carved out is prohibited and should be denied in its entirety.

(Doc. # 61 at 3-4) (emphasis added by Guarantors).

However, as Plaintiff correctly points out, Guarantors' arguments are at odds with the language of Section 5(b)(i), the Guaranty and the Loan Agreements, as well as settled contract construction.

7

First, Guarantors improperly fail to address the Guaranty in its entirety and instead, choose certain selected word groupings to assess. They also omit a key phrase from Section 5(b)(i) which changes the meaning of that section. *See Foster Wheeler Enviresponse, Inc.*, 78 Ohio St.3d 353, 361 (1997) ("writings that are a part of the same transaction shall be read as a whole, and the intent of each section shall be ascertained from a consideration of the whole"). Section 5(b)(i) states in its entirety:

> (b) The obligations of Guarantors under this Guaranty, **and the rights of Lender to enforce the same by proceedings, whether by action at law, suit in equity or otherwise**, shall not be in any way affected by any of the following:
>
>> (i) any insolvency, bankruptcy, liquidation, reorganization, readjustment, composition, dissolution, receivership, conservatorship, winding up or other similar proceeding involving or affecting Borrower, the Property or any part thereof, or a Guarantor;

(Doc. # 15, Tab 48 at §5(b)(i)) (emphasis added). The emphasized section of the contract provision -- "the rights of Lender to enforce the same by proceedings, whether by action at law, suit in equity or otherwise" – demonstrates that the obvious purpose of this provision is to identify the protections and rights available to the Lender, not to narrow them as Guarantors suggest.

Additionally, Section 5(b) addresses the obligations of Guarantors, not the restrictions on the obligations of Guarantors, as Guarantors propose. Section 5's heading states "Unconditional Character of Obligations of Guarantor." Likewise, the remaining provisions of Section 5 enumerate the breadth and scope of Guarantors' obligations, the waiver of defenses by

Guarantors, and that the Guaranty is intended to survive any other events or conduct.[2]

Moreover, a contract does not become ambiguous because the enforcement of its terms will cause hardship to the parties. *See Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Auth.*, 78 Ohio St.3d 353, 362 (1997).

Second, Guarantor Kahn's averment that it was not his understanding or intention to be bound for the full amount of the debt based upon the filing of a bankruptcy petition by Six Ventures does not save him from the consequences of his action of signing as a guarantor for the debt. Indeed, there is no evidence that Kahn was prevented from reading the contract or was a victim or fraud or mutual mistake. *See ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 503 (Ohio 1998) ("A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed."); *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) (citing *Allied Steel & Conveyors, Inc. v. Ford Motor Co.*, 277 F.2d 907, 913 (6th Cir. 1960) "one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions" ); *see also Pippin v. M.A. Hauser Enters., Inc.*, 111 Ohio App.3d 557, 676 N.E.2d 932, 937 (Ohio Ct. App. 1996) (noting that "[a] person who signs a contract without making a

_____

[2]Section 5(a) begins by reiterating that "the obligations of each Guarantor hereunder shall be irrevocable, absolute and unconditional, irrespective of the validity, regularity or enforceability, in whole or in part, of the other Loan Documents . . . ." The balance of Section 5(a) makes clear that its intention is to reiterate, reinforce and buttress the breadth and scope of the Guaranty, as it identifies the different ways in which the Lender can enforce the Guaranty and the lack of limitation on those remedies and it identifies waivers by Guarantors of numerous defenses including "diligence," "notice of acceptance," priority against the Borrower, and notice of default. Likewise, the remainder of Section 5 further confirms this intent to illustrate and enumerate the scope of the protection available to the Lender, not to limit or reduce the obligations of Guarantors.

reasonable effort to know its contents cannot, in the absence of fraud or mutual mistake, avoid the effect of the contract").

Based on the foregoing, the Court concludes that even when viewing the evidence in the light most favorable to Guarantors, *Adickes*, 398 U.S. at 157, there is no ambiguity in the phrase "Springing Recourse Event" nor is that phrase in direct conflict with other contract provisions at issue here. Indeed, the phrase as used in the Guaranty is simply not "susceptible to two or more reasonable interpretations." *Gencorp, Inc.*, 178 F.3d at 818. Thus, this Court must "presume that the parties' intent resides in the language of the" Guaranty and "shall apply the terms, not interpret them. *Foster Wheeler Enviresponse, Inc.*, 78 Ohio St.3d at 361. Accordingly, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment as it relates to application of the Springing Recourse Event contractual language.

**b. Six Ventures' bankruptcy filing constituted a springing recourse.**

Guarantors argue that because Steven Kahn did not consent to the filing of Six Ventures' bankruptcy and/or because that bankruptcy has been dismissed by the bankruptcy court, no Springing Recourse Event exists. As Plaintiff accurately contends, however, both these arguments contradict the plain contractual language of what constitutes a Springing Recourse Event.

Specifically, Section 10.1 of the Loan and Security Agreement, which was incorporated into the Guaranty, details what constitutes a Springing Recourse Event:

> Lender's agreement not to pursue personal liability of Borrower as set forth above SHALL BECOME NULL AND VOID and shall be of no further force and effect, and the Debt shall be fully recourse to Borrower in the event that one or more of the following occurs (each, a Springing Recourse Event ): *** (3) the occurrence of any condition or event described in either **Section 8.1(f)** or **Section 8.1(g)** and, with respect to such condition or event described in **Section 8.1(g)**, either

> Borrower, any Guarantor or any Person owning an interest (directly or indirectly) in Borrower or any Guarantor consents to, aids, solicits, supports, or otherwise cooperates or colludes to cause such condition or event or fails to contest such condition or event.

(Doc. 15, Tab 1. at §10.1) (emphasis in original). Section 8.1(g) of the Loan and Security Agreement identifies "any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law," among other things, as a Springing Recourse Event.

Under this language all that had to occur was either the Borrower Six Ventures file for bankruptcy or any Guarantor consent to, aid, solicit, support or otherwise cooperate or collude to the filing of the bankruptcy. Here, it is uncontroverted that Six Ventures consented to or supported the bankruptcy filing on its behalf and that Guarantor Rhodehamel actually filed the bankruptcy petition on behalf of Six Ventures, and thus consented to, aided, supported, cooperated or colluded in connection with that filing.

Additionally, there is nothing in the language of the Guaranty that requires unanimous consent or approval of the bankruptcy by all Guarantors. Nor is there any provision that provides a safe harbor for a Guarantor who claims to have objected to that filing after the fact. Rather, all that is required under the Guaranty and the Loan and Security Agreement is that the Borrower or a Guarantor have some role in the bankruptcy filing, which took place here.

Likewise, under the language of the Guaranty, it is irrelevant whether Kahn "objected" to the bankruptcy after it was filed. Neither Kahn nor McMenamy filed any document or pleading with the bankruptcy court that contested the filing of that bankruptcy at any time or that suggested that the filing was in any way improper. To the contrary, Six Ventures' counsel repeatedly assured the bankruptcy court that Six Ventures' bankruptcy filing was appropriate and duly authorized. (*See* Doc. # 71, Exhibit A.)

Finally, that the bankruptcy court ultimately dismissed Six Ventures' bankruptcy is irrelevant. There is no language in Sections 8.1(g) or 10.1 that suggests that the Springing Recourse Event is affected in any way by the fact that the bankruptcy is later dismissed. To the contrary, the plain language of Section 8.1(g) simply requires that "any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, Borrower or a Guarantor, as the case may be." (Doc. # 15, Tab 1 at §8.1(g)).

Thus, the Court concludes that, even when viewing the evidence in the light most favorable to Guarantors, " *Adickes*, 398 U.S. at 157, Six Ventures' bankruptcy filing constituted a Springing Recourse Event. The Guarantors have failed to "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)) with regard to this issue. Consequently, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment as it relates to Six Ventures' bankruptcy constituting a Springing Recourse Event.

### 2. Guaranteed Obligations

Guarantors also argue that Plaintiff in not entitled to summary judgment on their claim for individual liability against Guarantors because the definition of "Guaranteed Obligations" under the Guaranty is ambiguous. The Guaranty provides:

> The term Guaranteed Obligations means (i) Borrower's Recourse Liabilities, (ii) from and after the date that any Springing Recourse Event occurs, payment of all the Debt as and when the same is due in accordance with the Loan Documents (and whether accrued prior to, on or after such date).

(Doc. # 15, Tab 48, §1(b).)

Guarantors argue that this provision is "either explicitly contradictory," or limited solely to the "Borrower's Recourse Liabilities" from and after the date of a "Springing Recourse

12

Event."  (Doc. # 61 at 5.)  Guarantors explain:

> [T]he issue is whether "Guaranteed Obligations" should be read as a single statement (Borrower's Recourse Liabilities from and after the date…) or as a conjunctive phrase (Borrower's Recourse Liabilities or from and after the date….).  The fact that the transition from part (i) to part (ii) is alone and unmodified by any words, including "and" or "or" is dispositive.  As a result, and reviewing these terms in a light most favorable to Defendants, this sentence must be read as a single unit with part (ii) merely acting as a further restriction on part (i).  The combined effect results in "Guaranteed Obligations" meaning "Borrower's Recourse Liabilities from and after the date that any Springing Recourse Event occurs, payment of all the Debt as and when the same is due in accordance with the Loan Documents …."

*Id.* at 4.

In other words, Guarantors argue that part (ii) modifies or restricts part (i).  This Court, however, disagrees.

Plaintiff convincingly argues that the construction urged by Guarantors would render the entire definition unintelligible, as that construction would effectively result in the removal of the entire phrase "payment of all the Debt as and when the same is due in accordance with the Loan Documents."  Further, the absurdity of that construction is made manifest by its result – namely, that the more restrictive Recourse Liabilities would be reduced in the event of a Springing Recourse Event, an event so substantial and serious that it triggers full blown liability for the entire debt.  *See Gencorp, Inc.*, 178 F.3d at 818 (no ambiguity unless there are competing reasonable interpretations); *cf. Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St. 3d 635, 638 (Ohio 1992) ("looking at a contract's language, the words used will be given their ordinary meaning unless manifest absurdity results or some other meaning is clearly evidenced from the face or overall contents of the instrument").

Additionally, this interpretation would cause the Court to ignore and disregard the

parties' inclusion of the numbers (i) and (ii) in the definition of Guaranteed Obligations. Indeed, the use of numbers such as (i) and (ii) is found throughout the Guaranty and the Loan Agreements and is used to convey separate categories of information, conduct or requirements. *See e.g.*, Section 5(b); *see also Foster Wheeler Enviresponse, Inc.*, 78 Ohio St.3d 353, 362 (1997) ("if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain.").

Moreover, the Court recognizes that the Recourse Liabilities and Springing Recourse Event liabilities are distinct categories of obligations. The Recourse Liabilities are clearly enumerated, fixed and finite categories of obligations tied to specific inactions or misconduct that would specifically attach to Guarantors and the Borrower despite the generally non-recourse nature of the loan in question. For example, recourse liabilities include intentional waste of the property, rents that are misappropriated, security deposits that are misappropriated, failure to pay taxes, and misrepresentations as to environmental liability, among other things. (Doc. 15, Tab 1, §10.1(a) - (h)). In contrast, in the case of a Springing Recourse Event, the obligation described in Section 1(b)(ii) becomes all-encompassing – the Guarantor is now responsible for all of the debt – and the entire non-recourse nature of the Loan Agreements changes. Consequently, the conduct that triggers the Springing Recourse Event is not tied to a specific obligation but rather to conduct that impacts the debt as a whole.

Finally, Guarantors' suggestion that the words "and" or "or" should have appeared between parts (i) and (ii) is equally unavailing. As noted above, parts (i) and (ii) described two very different categories of Guaranteed Obligations under the Guaranty. Accordingly, as one

14

category was fixed and specific and the other contingent on some event and potentially all-inclusive, it was not necessary to have them joined by a disjunctive or conjunctive link. Instead, the parties simply opted to include the markers (i) and (ii) to denote that they were different categories of obligations. In fact, insertion of the word "or" could have led to confusion, as it might suggest that these two categories were mutually exclusive. Likewise, inserting the word "and" between the two categories could create confusion given that inclusion of that word might suggest that a Springing Recourse Event was necessary for recovery of the Recourse Liabilities.

The Court concludes, again viewing the evidence in the light most favorable to Guarantors, *Adickes*, 398 U.S. at 157, as this Court must, the term Guaranteed Obligations is unambiguous. That is, the meaning of the term is easily ascertained from the four corners of the contract and is therefore, not ambiguous. *See Gencorp, Inc.*, 178 F.3d at 818. Accordingly, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment as it relates to the application of the term Guaranteed Obligations.

**B. Procedure**

Guarantors argue that Plaintiff's partial summary judgment motion should be denied because it is beyond the scope of any allegations contained in Plaintiff's Amended Complaint and because the affidavit (and documents) for which the motion finds its support is not proper pursuant to 28 U.S.C. §1746.

**1. Scope of the Amended Complaint**

Guarantors argue that Plaintiff's Motion for Partial Summary Judgment is beyond the scope of its claim for breach of the Guaranty as set forth in its Amended Complaint because

"neither liability based on a Springing Recourse Event nor damages for the full Debt has been

pled" in it. Guarantors' argument is not well taken.

In the Amended Complaint, Plaintiff alleges:

On or about November 22, 2006, Defendants Rhodehamel, Kahn and McMenamy (collectively, "Guarantors") executed a certain Guaranty of Recourse Obligations (the "Guaranty") in favor of CFA and/or its assignees [here, six Ventures] unconditionally guarantying certain obligations due to CFA under the Loan Documents, including payment of certain amounts due and owing under the Note.

Pursuant to Section 2.(a) of the Guaranty, "Each Guarantor hereby irrevocably, absolutely and unconditionally guarantees to [CFA] the full, prompt and complete payment when due of the Guaranteed Obligations", including but not limited to payment of all debt as and when the same is due in accordance with the Loan Documents.
. . . .

THIRD CLAIM FOR RELIEF
(Against Defendant Guarantors for Breach of the Guaranty)

. . . .

Pursuant to the Guaranty, Guarantors personally agreed to pay Plaintiff "the full, prompt and complete payment when due of the Guaranteed Obligations" relating to or arising out of the Note and to indemnify Plaintiff against any losses or liabilities (including, without limitation, attorneys' fees and costs) arising from any violation of the Borrower's Recourse Liabilities described in Section 10.1 of the Loan Agreement.

(Doc. # 14 ¶¶ 131, 132, 155.)

The Court finds that based upon these allegations alone, Plaintiff more than provides the

notice required under Fed. R. Civ. P. 8(a)(2) to maintain its request for judgment against

Guarantors for the debt owed by Six Ventures. Rule 8(a) expressly states that a complaint need

only contain "a short and plain statement of the claim showing that the pleader is entitled to

relief." Under this rule of "notice pleading," a plaintiff need "only provide 'the defendant [with]

fair notice of what the . . . claim is and the grounds upon which it rests.' " *Wysong v. The Dow*

16

*Chemical Co.*, 503 F.3d 441, 446 (6th Cir. 2007) (alterations in original) (quoting *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007)).

Moreover, this Court has dealt previously with this issue when it afforded Guarantors the opportunity to conduct discovery regarding the Springing Recourse Event issue. In their October 3, 2008 Motion for an Extension of Time to Respond to Plaintiffs' Motion for Partial Summary Judgment, Guarantors contended that Plaintiff had altered its theory for relief through its summary judgment motion on the issue of their liability under a Springing Recourse Event. (Doc. 35 at 3.) As a result, Guarantors requested additional time to address this issue and be "given the opportunity to test Plaintiff's legal theories through all discovery methods available pursuant to the Federal Rules of Civil Procedure . . . ." *Id.* The Court granted Guarantors' request in part, specifically permitting them the opportunity to conduct discovery for 30 days and giving them an additional six (6) weeks to respond Plaintiff's motion.

Consequently, the Court concludes that Plaintiff's Motion for Partial Summary Judgment is not beyond the scope of its claim for breach of the Guaranty as set forth in its Amended Complaint. This argument cannot prevent the imposition of summary judgment against Guarantors.

### 2. Propriety of Supporting Affidavit (and documents)

Guarantors argue that the documents relied upon by Plaintiff in support of its summary judgment motion are not supported by an affidavit containing 28 U.S.C. §1746's sworn declaration requirement and thus, the affidavit is insufficient to authenticate the documents it purports to authenticate. Specifically, Guarantors argue that the Affidavit of John R. Driscoll, which authenticates the documents attached to the Amended Complaint, is defective in that it

fails to contain the phrase "under penalty of perjury" as is required by 28 U.S.C. §1746. Guarantors' argument is not well taken.

Notwithstanding Guarantors' argument to the contrary, the Affidavit of John Driscoll states that it is offered "under penalty of perjury." (Doc. # 17-2.) Additionally, as Plaintiff accurately explains, 28 U.S.C. §1746 is inapplicable to Guarantors' argument regarding affidavits. 28 U.S.C. §1746 is expressly titled "Unsworn declarations under penalty of perjury." Under that section, where a rule, regulation, order, or other legal requirement demands that a matter be supported by a sworn declaration, the affiant can submit, with like force and effect, an unsworn declaration, so long as the statement is written by the affiant and declares that it is made under penalty of perjury. The "under penalty of perjury" language is not a requirement for all affidavits and like statements, just those that are unsworn, *i.e.*, those that are not notarized. *See* S.D. Ohio Civ. R. 7.2(e) ("Evidence ordinarily shall be presented, in support of or in opposition to any Motion, using affidavits [or] declarations pursuant to 28 U.S.C. §1746 . . . ."); *Tdata, Inc. v. Aircraft Technical Publishers*, Case Nos. 2:03-cv-264, 2:04-cv-1072, 2007 U.S. Dist. LEXIS 8541, at *9-10 (S.D. Ohio Feb. 6, 2007) (outlining the differences between a sworn affidavit and an unsworn affidavit that may qualify under 28 U.S.C. §1746) (citations omitted).

Thus, Guarantors' argument regarding the propriety of the Driscoll affidavit cannot prevent the imposition of summary judgment against Guarantors.

## C. Public Policy

Guarantors argue that allowing Plaintiff to recover damages based upon Six Ventures's bankruptcy filing violates public policy in that it restricts duties owed by Defendants to other creditors when Six Ventures became insolvent. Also, Defendants contend that the contractual

provision that designates the filing of a bankruptcy petition as a Springing Recourse Event places "Defendants in the untenable situation of choosing between exercising rights under Chapter 11 of the Bankruptcy Code, which may be consistent with (or even compelled) by Ohio Revised Code § 1701.59, or not taking advantage of the Bankruptcy Code so as to protect themselves and Plaintiff, to the detriment of other creditors." (Doc. # 61 at 11.) Guarantors' arguments are, again, not well taken.

First, obtaining a judgment against the guarantors of a corporation's debt is not void as contrary to public policy. Rather, the inverse is true. Individuals are permitted to contractually obligate themselves to pay the debts of another and, if those debts are not paid, obtaining a judgment is the only manner by which a plaintiff can obtain a judicial declaration that the guarantors are indebted to the lender. Indeed, the definition of a "judgment" is "the court's official decision with respect to rights and obligations of the parties to a lawsuit, with respect to the claims involved, or upon matters submitted to it in a proceeding." 46 Am. Jur. 2d Judgments §1 (2008) (internal citations omitted). "A judgment represents a judicial declaration that a judgment debtor is personally indebted to a judgment creditor for a sum of money." 46 Am. Jur. 2d Judgments §10 (2008) (internal citations omitted).

Further, Guarantors' argument that the bankruptcy filing/Springing Recourse Event clause places them in an "untenable situation" lacks merit. This Springing Recourse Event created liability for the individual guarantors–it did not prevent Six Ventures from seeking protection afforded by the Bankruptcy Code.

Finally, Guarantors improperly cite Ohio Revised Code § 1701.59(D).[3] Plaintiff is suing Guarantors for a breach of the Guaranty, not for taking *ultra vires* action as directors of Six Ventures. Thus, the Ohio Revised Code section relating to the authority of corporate directors cited by Guarantors is irrelevant for the determination of whether the they are liable for the full debt due and owing under the Loan Agreements, including the Guaranty.

The Court concludes that, even when viewing the evidence in the light most favorable to Guarantors, " *Adickes*, 398 U.S. at 157, Guarantors have failed to "set forth specific facts showing that there is a genuine issue for trial" *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)), with regard to their public policy argument. Indeed, there is no issue of material fact related to the Loan Agreements or Guaranty being void as against public policy. Accordingly, Guarantors' argument regarding the validity of the contracts at issue here cannot prevent the imposition of summary judgment against them.

## IV. Conclusion

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion for Partial Summary

---

[3]Ohio Rev. Code 1701.59(D) provides:

A director shall be liable in damages for any action that the director takes or fails to take as a director only if it is proved by clear and convincing evidence in a court of competent jurisdiction that the director's action or failure to act involved an act or omission undertaken with deliberate intent to cause injury to the corporation or undertaken with reckless disregard for the best interests of the corporation. Nothing contained in this division affects the liability of directors under section 1701.95 of the Revised Code or limits relief available under section 1701.60 of the Revised Code. This division does not apply if, and only to the extent that, at the time of a director's act or omission that is the subject of complaint, the articles or the regulations of the corporation state by specific reference to this division that the provisions of this division do not apply to the corporation.

Judgment.  (Doc. # 32.)  The Magistrate Judge will schedule a Preliminary Pretrial Conference.

**IT IS SO ORDERED.**

       **/s/      Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**